(No. 30338.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRED H. PUTNAM, Plaintiff in Error.

*Opinion filed November 20, 1947.*

LOUIS L. MASON, and F. R. WILEY, both of Decatur, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, of Springfield, (IVAN J. HUTCHENS, State's Attorney, of Decatur, of counsel,) for the People.

Mr. JUSTICE SIMPSON delivered the opinion of the court:

This case is here on writ of error to the circuit court of Macon County.

Plaintiff in error, Fred H. Putnam, was indicted for the murder of one Dalton Rice in Macon County, February 10, 1947. The crime was alleged to have been committed on January 4, 1947. On February 13, 1947, plaintiff in error was furnished a copy of the indictment and on the following day he appeared in open court, accompanied by counsel of his own choosing, and filed a motion to quash, which was overruled, whereupon he entered a plea of not guilty. On February 28, 1947, he again appeared with counsel and moved to withdraw his plea of not guilty which was allowed. He then offered to plead guilty and was admonished by the court as to the consequences of such plea and advised as to his rights. He still persisted in the plea of guilty which was then accepted by the court. A jury waiver having been signed, the court found his age to be 33 years and thereafter sentenced him to life imprisonment. He was remanded to the custody of the sheriff and was by that officer on the same day delivered to the penitentiary to serve his sentence.

After the plea of guilty was accepted, but before sentence was pronounced, evidence in aggravation and mitigation was heard by the court. This evidence disclosed that plaintiff had served in World War II, during which time he received certain injuries and was subjected to certain

hardships, artillery fire and other dangers which he claims rendered him highly nervous and affected him mentally. He was in the hospital several times, once in a mental ward. He was honorably discharged from the army in October, 1945.

In October, 1946, he fell down a flight of stairs and received a lineal skull fracture above the left eye about 2½ inches in length which rendered him unconscious for a time. Since being discharged from military service plaintiff in error has been very nervous, has not slept well, would walk the floor at night and would sit in a chair with his head down between his legs and seemed to be in a daze; certain noises startled him, causing him to shake all over and break out in a cold sweat.

Rice was shot by plaintiff in error in a gambling house operated by one John Street. Plaintiff in error had lost money gambling therein. The gun with which he did the shooting had been borrowed for hunting purposes. He said he thought the gun was not loaded. He took it with him to a tavern adjacent to the gambling room and left it back of the bar with the bartender while he drank some beer. An hour or so later he repossessed the gun and started home. As he was passing the door of the room in which gambling was in progress he noticed it was partly open and saw people shooting craps. Street had refused to let him partake in further gambling after his loss was sustained, which provoked him. He testified that it occurred to him he could recover his losses by robbing the place. He entered the room with drawn gun and demanded the bank roll. He was told there was no bank roll but the only money was in a small box on the table. Someone emptied the money from the box onto the table. One of the occupants started to leave the room and was hit on the head with the gun by plaintiff in error. Plaintiff in error ordered that the money be placed in his pocket by

Rice. While this was being done, or immediately there-after, the gun was discharged striking Rice in the breast and killing him almost instantly.

The doctor who was called at the time plaintiff in error fell downstairs and who treated him for the injury for nineteen days thereafter at the hospital, testified as to his condition and gave as his opinion that plaintiff in error, so far as he was able to determine, was in complete possession of all his faculties and knew right from wrong.

At the conclusion of the evidence, counsel on both sides presented their views as to its effect. Counsel for plaintiff in error stated in substance that his client was not shown to be legally insane; that they were not even inferring insanity; that the mind of plaintiff in error was not affected to that extent and degree and that no claim was made and no question raised of mental incompetency on the part of his client; that the sole purpose of the evidence was to show what effect all of these injuries and occurrences had upon his mind so as to negative to some extent the element of malice and to induce the court to be more lenient in pronouncing sentence.

When plaintiff in error pleaded guilty he told the court that he had been duly advised by both the court and his own attorney and that he knew the business he was about and that he desired to enter the plea of guilty to the indict-ment. There is no suggestion that his attorney was inex-perienced or incapable of properly advising him.

On March 8, 1947, plaintiff in error, through counsel other than the one who represented him prior to his in-carceration, filed a motion in the lower court to vacate the judgment and the sentence, to set aside the plea of guilty and the waiver of jury trial and to permit him to plead not guilty. This motion was denied. A motion was then filed in arrest of judgment, which was also denied.

Counsel agree that the question for decision here is the validity of the plea. Plaintiff in error contends the

court should have refused to accept it until his mental competency had been established. The People, on the other hand, contend that there was no issue before the court as to the mental competency of plaintiff in error and that the court was justified in accepting the plea.

At the time the plea of guilty herein was accepted there was nothing before the court which in any way cast suspicion upon the sanity of the accused. The evidence thereafter offered was with reference to aggravation and mitigation. Through statements of his own counsel, plaintiff in error asked the court not to consider it as tending in any way to show mental incompetency.

All men are presumed to be sane and it is unnecessary for the People in the first instance to prove the sanity of the accused. (*People* v. *Christensen,* 336 Ill. 251; *People* v. *Casey,* 231 Ill. 261.) The duty and responsibility of raising the question of insanity of one charged with crime rests upon him and his counsel. *People* v. *Haupris,* 396 Ill. 208; *People* v. *Wagner,* 390 Ill. 384; *People* v. *Hart,* 333 Ill. 169.

Plaintiff in error having been delivered to the penitentiary and having entered upon the execution of his sentence on February 28, 1947, the trial court thereafter was without jurisdiction to set aside and vacate or to arrest its judgment. *People* v. *Hamel,* 392 Ill. 415.

Finding no error in the record, the judgment is affirmed.

*Judgment affirmed.*